**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LARRY A. ODOM, SR., *et al.*,** | ) | |
| | ) | |
| **Plaintiffs / Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 09-0147-WS-N** |
| | ) | |
| **SOUTHEAST SUPPLY HEADER, LLC,** | ) | |
| | ) | |
| **Defendant / Counter-Plaintiff.** | ) | |

**ORDER**

This matter comes before the Court on the Motion for Partial Summary Judgment (doc. 23) filed by defendant / counter-plaintiff, Southeast Supply Header, LLC ("SESH"), and on the Motion to Strike Affidavit of Katherine J. Maidens (doc. 44) filed by plaintiffs / counter-defendants, Larry and Judy Odom (the "Odoms"). Both Motions have been briefed and are now ripe for disposition.

**I.     Nature of the Case.**

This lawsuit arises from an easement agreement entered into between SESH and the Odoms, pursuant to which SESH was authorized to install a natural gas pipeline some 8 feet below the surface of the Odoms' property. The Odoms allege that SESH placed the pipeline in the wrong location, and refused to reposition it when the error was discovered. Plaintiffs maintain that the result of SESH's conduct (which plaintiffs characterize as deliberate, intentional or reckless) is that a strip of "no-man's land" has been created on the Odoms' property, diminishing the value of such property and causing plaintiffs to suffer mental anguish. Thus, the gravamen of the wrong about which the Odoms are complaining is that SESH has created a swath of land on their property that the Odoms cannot use because it is trapped between two easements that were supposed to be contiguous.

On the basis of these facts, the Odoms filed their Complaint (doc. 1) against SESH in this

District Court.[1]  The Complaint alleges four overlapping state-law causes of action against SESH, to-wit: (1) a claim of fraud predicated on SESH's representations "that the SESH pipeline would be adjacent to and contiguous to the southern boundary of the existing Gateway pipeline" (Complaint, ¶ 10); (2) a claim of continuing trespass arising from SESH's installation of its pipeline in the improper location; (3) a claim of nuisance based on SESH's installation of its pipeline in a manner "which causes the Plaintiffs to lose a piece of property spanning from tw [*sic*] (2) to seven (7) feet between the northern boundary of the SESH easement and the southern boundary of the Gateway easement" (*id.*, ¶ 17); and (4) an inverse condemnation claim that SESH violated the Alabama Eminent Domain Code, Ala. Code §§ 18-1A-1 *et seq.*, by converting the Odoms' property "into a right-of-way without authority for SESH without compensation" (*id.*, ¶ 20).  As to the fraud, trespass and nuisance causes of action, the Odoms seek "compensatory damages consisting of diminution in value to their real estate and mental anguish damages" (*id.* at 5-6) for the property that SESH allegedly took from them by placing the pipeline in the wrong location.  Plaintiffs also demand statutory damages on the inverse condemnation claim.

Pursuant to Rule 13, Fed.R.Civ.P., SESH brought a Counterclaim (doc. 9) against the Odoms.  In Count One of the Counterclaim, SESH requests a declaratory judgment "that the SESH pipeline has been constructed in a location permitted by the Easement Agreement and that SESH has complied with the terms of the Easement Agreement" (doc. 9, at 12-13).  In Count Two, SESH alternatively requests entry of a judgment reforming the easement instrument in such a manner as to eliminate discrepancies between the parties' understanding and the terms of that instrument.  Count Three of the Counterclaim alleges abuse of process by Mr. Odom, contending that his activities up to and including his prosecution of this lawsuit "are and have been intended to cause needless expense and harassment to SESH" (*id.*, ¶ 23).

SESH now seeks summary judgment in its favor as to Counts One or Two of the Counterclaim, as well as on all of the Odoms' claims in the Complaint.  SESH does not move for

---

[1]     Although the Odoms' causes of action against SESH sound exclusively in state law, they have properly invoked federal jurisdiction under 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship and the Odoms expressly claim damages in excess of the $75,000 jurisdictional threshold.

summary judgment as to Count Three of the Counterclaim.

## II.    Relevant Background Facts.[2]

The summary judgment record is largely underdeveloped.[3]  Fortunately, the basic underlying facts appear to be both straightforward and undisputed.  There is no disagreement that SESH owns and operates a 269-mile long interstate gas pipeline running from northeastern Louisiana into this judicial district, and that construction of this pipeline was approved by the Federal Energy Regulatory Commission ("FERC").  Likewise, it appears agreed that one or both of the Odoms own two parcels of property in Mobile County, Alabama, that lie along the pipeline route, thereby obliging SESH to acquire an easement from them before installing the pipeline across those parcels.[4]  It is also uncontroverted that the Odoms did in fact grant an

---

[2]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, the Odoms' version of the facts is taken as true and all justifiable inferences are drawn in their favor.

[3]    Counsel on both sides have taken unwarranted liberties in factual recitations, stating "facts" untethered to record citations.  Such an approach is improper.  *See, e.g., Taylor v. Holiday Isle, LLC*, 561 F. Supp.2d 1269, 1275 n.11 (S.D. Ala. 2008) ("Unadorned representations of counsel in a summary judgment brief are not a substitute for appropriate record evidence."); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other such self-serving documents, are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment.").  The Local Rules require a summary judgment movant to submit proposed factual findings "with all findings of fact appropriately referenced to the supporting document or documents filed in the action or in support of the motion" and a nonmovant to "point out the disputed facts appropriately referenced to the supporting document or documents filed in the action."  LR 7.2(a) & (b).  Yet in this case, the parties neglect to furnish any record citations in support of numerous "facts."

[4]    SESH suggests that Judy Odom holds no ownership interest in the subject property.  However, defendant submits no evidence to support this assertion and does not purport to seek summary judgment against her on that basis.  In the absence of a developed record on this point, the Court will refer to the parcels at issue as the "Odoms' property" or "plaintiffs' property," notwithstanding defendant's position that Mrs. Odom is not in fact an owner of that property.

easement to SESH in December 2007, in exchange for total consideration of $120,000.[5]

Pursuant to their agreement with SESH, the Odoms executed a Grant of Easement (the "Easement") in SESH's favor on December 28, 2007.  The Easement grants a permanent right-of-way to SESH, with the location established by reference to an existing permanent easement on the same property.  In particular, the Odoms already had granted an unrelated easement (the "Gateway Easement") to another company back in September 1991 on the same parcels for placement of an another pipeline.  The Easement granted by the Odoms to SESH provided for the easement to be positioned as follows:

> "The Right-of-Way herein granted shall be a total width of fifty feet (50'), extending twenty-five feet (25') on either side of the centerline of the initial pipeline to be constructed hereunder as shown on the drawings attached hereto ....  The location of said Right-of-Way shall be fixed and determined by the initial pipeline as installed on Grantor's Land, but it will, ***within a limited margin of error***, be located so that one entire edge of the Right-of-Way shall be adjacent and parallel to the current boundary of the permanent easement of the existing pipeline ... on the Grantor's Land ...."

(Maidens Aff., Exh. A, at 2 (emphasis added).)  The phrase "within a limited margin of error" is not a defined term in the Easement and no clues as to its intended meaning are set forth in that document.[6]

---

[5]      Defendant asserts that this figure was "well in excess of the appraised value" (doc. 24, at 2) of the property, but offers no evidence in support of that proposition.  There being no indication that plaintiffs concur with this point and no record evidence to support it, SESH's suggestion that it paid a hefty premium for the Odom easement will not be credited.

[6]      On summary judgment, the parties spar over the source of that clause.  The Odoms assert that "the margin of error language was not placed in the document as a result of the Odoms' attorney's request."  (Doc. 43, at 9.)  Meanwhile, SESH insists that this language "was inserted at the suggestion of Mr. Odom's prior lawyer."  (Doc. 24, at 4.)  The record is ambiguous.  Defendant relies on documentation showing that on December 20, 2007, SESH's counsel sent a draft Easement to the Odoms' then-counsel that omitted the "within a limited margin of error" clause in favor of a more general statement that "It is intended that this 50-foot permanent easement shall be adjacent and parallel to" the Gateway Easement.  (Doc. 48, Exh. 1, at 3.)  The next morning, the Odoms' attorney transmitted a revised draft Easement back to SESH's counsel, deleting the "it is intended" language and adding the "limited margin of error" provision.  (*Id.*, Exh. 2, at 4.)  But the mere fact that the Odoms' attorney made the keystrokes to edit the draft Easement tells us nothing about which party proposed and crafted that language.  The December 21 revision included numerous line edits, without identifying the <u>source</u> of those

On its face, then, the Easement contemplated that SESH would install the pipeline in such a manner that its centerline would be 25 feet from the boundary of the Gateway Easement, with allowance for "a limited margin of error," whatever that means. SESH's right-of-way would then extend 25 feet from either side of the centerline of its pipeline. If SESH lined up the centerline exactly 25 feet from the edge of the Gateway Easement, then there would be no unusable strips of "no man's land" in between the two easements. Avoidance of such gaps appears to have been of central importance to the Odoms.

Defendant's counsel represents, with no citations to the record, that "pipeline construction cannot be that precise" because of the width of the pipe, the variable nature of the landscape, the heavy machinery used, and confusion as to the exact boundary of the Gateway Easement. (Doc. 24, at 3.) In the absence of any record basis for these statements, however, the Court cannot make any determinations as to the ease or difficulty of the pipe-installation endeavor and the degree of imprecision that it entails.[7] Be that as it may, the record is clear that SESH did not attain 25-foot precision of centerline to edge of Gateway Easement in installing

revisions. For all the record shows, these changes could just as easily constitute either unilateral changes proposed by the Odoms or bargained-for language proposed by SESH in back-and-forth discussions during the previous 24-hour period. On this record, the Court cannot say with any confidence that the Odoms authored the "limited margin of error" proviso, rather than simply inserting it in the document after SESH proposed it as a compromise measure. This uncertainty is not abated by plaintiffs' reliance on a May 23, 2008 e-mail message in which SESH's counsel acknowledged, "I see that our agreement actually says that it will be 25 feet on either side of the as-built centerline, with SESH to try to be adjacent but given room for a 'limited margin of error.'" (Doc. 45, Exh. 3.) Contrary to plaintiffs' argument, nothing in the May 23 e-mail can reasonably be read as reflecting who initially proposed the "limited margin of error" terminology. At this point, then, the record does not allow a fixed conclusion as to which party drafted the clause. Because reasonable inferences are drawn in the Odoms' favor on summary judgment, the Court will assume (without deciding) that SESH crafted the "limited margin of error" text.

[7] At most, defendants have included in the record (albeit with no citations in their brief) a statement by a SESH manager that "[p]ipeline location during construction is almost impossible to control with high precision." (Maidens Aff., ¶ 4.) But the record is devoid of evidence of the causes of that lack of precision, much less the degree of imprecision encountered on the Odoms' property specifically. The Court has no basis for making findings about how easy or difficult it was for SESH to "get it right" on the Odoms' land, and therefore refrains from same.

the pipeline across the Odoms' property.  Land surveys commissioned by SESH after the fact clearly display a gap between the two easements, progressively widening from 1.35 feet at the southeastern corner of the Odoms' parcel northwest of Dawes Road, to as wide as 5.23 feet at the northwestern corner of that parcel.  (Bartolazzi Aff., at Exh. A.)[8]

Based on the observed, documented gap between the two easements, the Odoms filed suit.  Their Complaint provides that the harms for which the Odoms seek compensation (on theories of fraud, trespass, nuisance and inverse condemnation) are confined to "[l]oss of use and/or value of the properties that has [*sic*] been rendered a no man's land by and between the SESH easement and the Gateway easement" and "severe inconvenience and mental anguish due to the fact that representations were made to them which they relied on in good faith in the course of negotiations with SESH and ... SESH ... has ignored the Plaintiffs' request to rectify this situation."  (Complaint, ¶ 11(a) - (b).)[9]

Defendant now seeks summary judgment on two grounds.  First, SESH maintains that the

---

[8]     It appears that the Odoms' dissatisfaction stems, at least in part, from the fact that SESH had more success in aligning the two easements on their parcel to the southeast of Dawes Road than on the northwest parcel.  Indeed, the survey shows that the gap between the two easements on the Odoms' property southeast of Dawes Road ranged from 0.06 feet to 0.35 feet, which is considerably smaller than that observed on the Odoms' northwest property.  (Bartolazzi Aff., at Exh. B.)  The facts reasonably raise a question as to why SESH installed the pipeline with such precision on the Odoms' parcel southeast of Dawes Road, but did not do so on the much larger section of the right-of-way on the Odoms' northwest parcel.

[9]     For its part, SESH disputes the Odoms' characterization that it ignored their concerns.  According to SESH, it "offered to completely eliminate the alleged gap by amending the Easement Agreement to define the SESH easement to encompass no more than the 50 foot strip of land immediately adjacent to the south line of the Gateway Easement. ... Notwithstanding the Plaintiffs' professed desire to avoid any gaps between the two easements, they refused to amend the Agreement and sued for damages instead."  (Doc. 47, at 2-3.)  If it is ultimately shown that the Odoms rejected without cause a proposal that would have eliminated the "no man's land" gap between easements that forms the principal basis of this lawsuit, only to sue SESH over the presence of that very gap, such a sequence of events may be sanctionable, or may constitute abuse of process.  Federal lawsuits are not properly brought to pursue a vendetta or exact revenge.  If defendant offered to resolve fully the easement "gap" on which the Complaint is predicated, and if plaintiffs rejected that offer and filed suit concerning that gap instead, the plaintiffs will be expected to present a good-faith explanation for such conduct at an appropriate time.

pipeline was constructed in accordance with the Easement and that it is entitled to a declaration on this point, as a matter of law.  Second, in the alternative, SESH contends that it is entitled to summary judgment on its reformation claim because the parties' mutual intent was for the 50-foot right-of-way to be adjacent to the Gateway Easement.  SESH maintains that reformation of the Easement to correct the mistake in the instrument would resolve all of the Odoms' claims herein.

## III.     Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law."  Rule 56(c)(2), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## IV.     Analysis.

### A.     *Whether Defendant's Conduct Comports with the Easement.*

As its first ground for summary judgment, SESH urges the Court to decide the declaratory judgment cause of action set forth as Count One of the Counterclaim by finding as a matter of law that SESH complied fully with the Easement in installing the pipeline.  SESH does not suggest, and there is no evidence to support, that the pipeline's centerline was exactly 25 feet

from the edge of the Gateway Easement for the entire length of the right-of-way.  Rather, SESH invokes the "limited margin of error" clause and contends that constructing the pipeline in a manner that the centerline varied from 25.06 feet to 30.23 feet from the edge of the Gateway Easement was close enough to satisfy the "limited margin of error" proviso.

Ultimately, whether SESH installed its pipeline on the Odoms' property in a manner that comported with the Easement turns on the meaning of the provision that SESH must locate the pipeline "within a limited margin of error ... so that one entire edge of the Right-of-Way shall be adjacent and parallel to the current boundary of the" Gateway Easement.  (Maidens Aff., Exh. A, at 2.)  The determination in turn hinges on the proper construction of that language under Alabama law.

In general, but not always, "the interpretation of such easements is a question of law for the court and is appropriately resolved on a motion for summary judgment."  *Cousins v. Alabama Power Co.*, 597 So.2d 683, 687 (Ala. 1992).  Alabama courts explain that in interpreting easement agreements, "construction of [the] written document is a function of the court. ... In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous, that the court may look beyond the 'four corners' of the instrument to give clarity and specificity of meaning."  *Blackburn v. Lefebvre*, 976 So.2d 482, 489-90 (Ala.Civ.App. 2007) (citations omitted); *see also Lawley v. Abbott*, 642 So.2d 707, 708 (Ala. 1994) (if easement "language is unambiguous, the court may not consider parol evidence" in construing the document).  "If the language of the [easement] is clear and free from doubt, such language is not the subject of interpretation.  If subject to interpretation, the extent of the easement depends on the intention of the parties as gathered from the terms of the deed and the situation of the land."  *Weeks v. Wolf Creek Industries, Inc.*, 941 So.2d 263, 270 (Ala. 2006) (citation omitted).[10]  Where the language of an easement is uncertain, "the surrounding

_____

[10]     The principles announced by Alabama courts for interpreting easements bear marked similarity to those for interpreting contracts generally.  *Cf. Drummond Co. v. Walter Industries, Inc.*, 962 So.2d 753, 780 (Ala. 2006) ("General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract."); *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala. 2003) ("The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. ... If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for

-8-

circumstances, including the construction placed on the language by the parties, [are considered] so as to carry out the intention of the parties." *Lawrence v. Pate*, 594 So.2d 73, 75 (Ala. 1992).[11]

On summary judgment, SESH urges this Court to find that the gap of between .06 feet and 5.23 feet between the SESH right-of-way and the Gateway Easement falls within the "limited margin of error" authorized by the Easement.  The problem is that the phrase "limited margin of error" is ambiguous and uncertain.  On its face, it could reasonably mean anything from 6 inches to 20 feet.  Accordingly, decisions such as *Weeks* and *Lawrence* direct the Court to interpret the Easement so as to carry out the intention of the parties.  Movant offers no record evidence as to that intent.  To be sure, SESH's lawyers represent in conclusory terms that the observed gap between the SESH right-of-way and the Gateway Easement "is exactly the kind of tolerance envisioned" by the "limited margin of error" language.  (Doc. 24, at 8.)  But where is the evidence that anyone at SESH (much less the Odoms) "envisioned" an error exceeding 5 feet as being "exactly the kind of tolerance" that the Easement was crafted to permit?  SESH makes no such showing, but instead essentially acknowledges the uncertainty of the term's meaning without offering any record basis for resolving that uncertainty.[12]  Plaintiffs' brief lends no illumination as to the parties' intent, either, but instead ignores the critical "limited margin of error" terminology altogether except to deny that the Odoms' attorney drafted it.[13]

_____

the court.") (citation omitted).  Therefore, the undersigned may borrow from general Alabama contract construction principles as appropriate.

[11]     The parties' summary judgment briefs neither identify these authorities nor even identify the operative principles for construing an easement instrument under Alabama law.  Because of this omission, the undersigned does not have the benefit of either side's take as to the proper application of these principles here.

[12]     SESH seems to admit in its reply brief that no one knows what a "limited margin of error" is and that the term defies precise definition.  In particular, defendant criticizes the Odoms' attempt to apply a "hard and fast measurement" to that term as follows: "Under Plaintiffs' standard, at exactly what point does the gap fall outside of the margin of error?  6 inches?  1 foot?  3 feet?"  (Doc. 47, at 6 n.3.)  If SESH does not know what "limited margin of error" means, how can this Court make that determination on summary judgment?

[13]     Plaintiffs disregard inconvenient language and instead adopt the stance that "[t]he operative language in the Grant of Easement is that the center of the easement so condemned is the pipeline and that it would be located so that one entire edge of the right-of-way would be

-9-

Faced with ambiguous contractual language, courts applying Alabama law "employ established rules of contract construction to resolve the ambiguity."  *Mega Life and Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 992 (11th Cir. 2008) (citations omitted); *see also McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So.3d 318, 327 (Ala. 2008) (same).  As to easements and general contracts alike, ambiguous language is construed against the drafter.  *See Sprinkle v. American Mobilephone Paging, Inc.*, 525 So.2d 1353, 1356 (Ala. 1988) ("The terms of an easement, when doubtful, are construed more strongly against the party who prepared the instrument setting forth the easement, and if two reasonable interpretations are present, the courts should favor the one that is the most unfavorable to the maker.").  But this rule of construction provides no solace to SESH on summary judgment because, as discussed in footnote 6, *supra*, it is unclear which side actually drafted the ambiguous language.  As presented, the record supports a reasonable inference that SESH authored the "limited margin of error" language, and that inference must be credited on summary judgment.  In short, SESH cannot now prevail on the ground that the ambiguous Easement terms are to be construed against the drafter because the identity of the drafter is, itself, a disputed question of material fact.

Where, as here, the contract language is ambiguous, the rules of contract construction do not resolve it, and fact questions persist, it is for the finder of fact to decide the contract's meaning.  *See McLemore*, 7 So.3d at 327 ("Where factual issues arise, the resolution of the ambiguity becomes a task for the jury.") (citations omitted); *Murray v. Holiday Isle, LLC*, 620 F. Supp.2d 1302, 1322 (S.D. Ala. 2009) (recognizing that courts must "submit the ambiguity to the finder of fact if application of ... canons of construction proves insufficient to resolve it").  Defendant's Motion is therefore **denied** as to Count One of the Counterclaim because (1) the meaning of the phrase "within a limited margin of error" is ambiguous, (2) the parties failed to

---

adjacent to" the Gateway Easement.  (Doc. 43, at 3.)  Thus, rather than offering insights as to the meaning of the "limited margin of error" language, plaintiffs interpret the Easement as if that language did not exist.  This is improper.  *See generally Turner v. West Ridge Apartments, Inc.*, 893 So.2d 332, 335 (Ala. 2004) ("A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.") (citations omitted); *Federal Land Bank of New Orleans v. Terra Resources, Inc.*, 373 So.2d 314, 320 (Ala. 1979) (in interpreting an instrument, "terms should be construed *in pari materia* and a construction adopted which gives effect to all the terms used").

submit extrinsic evidence to shed light on its meaning, (3) established rules of contract construction do not resolve the ambiguity, and (4) genuine issues of fact remain as to that term's meaning, and whether SESH's installation of the pipeline was within the tolerances provided in the Easement.

   **B.**  ***Whether Reformation is Warranted as a Matter of Law.***

  As an alternative to its contention that it complied with the Easement, SESH requests summary judgment as to Count Two of its Counterclaim.  Defendant seeks equitable reformation of the Easement, essentially asking the Court to rewrite the instrument "to specify that the permanent 50-foot easement granted to SESH therein is located such that the northerly edge ... is adjacent to the southerly edge ... of the [Gateway Easement] and that the pipeline can be located anywhere within the 50-foot permanent easement."  (Doc. 9, at 14.)

  As grounds for this reformation argument, defendant invokes Alabama Code § 35-4-153, which provides in relevant part as follows:

> "When, through fraud, or a mutual mistake of the parties, ... a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention ...."

*Id.*  Here, there is no suggestion of fraud; however, SESH does contend that the Easement was the product of "the parties' mutual mistake in describing the property covered by the SESH easement."  (Doc. 24, at 10.)  According to SESH, the parties agreed at the time of the Easement's execution that SESH's right-of-way was to encompass the 50-foot wide strip directly adjacent to the Gateway Easement, yet they garbled this intent by framing the border of the right-of-way by reference to the 25-foot swaths on either side of the centerline of the SESH pipeline, rather than the 50-foot span abutting the boundary of the Gateway Easement. Defendant contends that there are no genuine issues of material fact and that the parties were mutually mistaken in delineating the Easement the way they did, when they really intended the SESH right-of-way to be adjacent to the prior easement.  As such, SESH asks this Court to reform the Easement "to describe the SESH easement as only covering the 50-foot strip of land immediately adjacent to the south line of the Gateway easement," as a result of which the SESH pipeline would be "slightly off the centerline of the right-of-way."  (Doc. 24, at 10-11.)

  Alabama case law clarifies the circumstances under which a court may perform

-11-

reformation under § 35-4-153. Because of the presumption that an instrument reflects the parties' true agreement, a party seeking reformation under the statute bears a heavy burden. "Clear, convincing, and satisfactory proof is required to rescind or reform a deed ... on the grounds of mistake." *Mullinax v. Mullinax*, 495 So.2d 646, 648 (Ala. 1986) (citations omitted); *see also Fadalla v. Fadalla*, 929 So.2d 429, 434 (Ala. 2005) ("To rebut this presumption, the party seeking reformation must produce clear, convincing, and satisfactory evidence that the deed does not express the true intentions of the parties at the time the instrument was created."). The key to reformation based on mistake is "the existence of a valid agreement to which the instrument can be made to conform." *Beasley v. Mellon Financial Services Corp.*, 569 So.2d 389, 393 (Ala. 1990). After all, "[t]he trial court cannot make the instrument express a new contract for the parties," but can only reform the instrument to express the agreement they actually made but memorialized incorrectly in the instrument. *Id.*; *see also Rohleder v. Family Shows, Inc.*, 435 So.2d 95, 97 (Ala.Civ.App. 1983) ("Reformation is not available to make a new agreement."). In other words, if the parties agreed X and their instrument says X, the Court cannot reform it to say Y. But if the parties agreed X and their instrument mistakenly says Y, then § 35-4-153 authorizes the Court to reform the instrument to say X. Thus, "[a] mutual mistake exists when the parties have entered into an agreement, but the deed does not express what the parties intended under the agreement." *Fadalla*, 929 So.2d at 434; *see also Beasley*, 569 So.2d at 394 (the mutuality of mistake required is that the parties "must all have agreed to the same terms and have mistakenly assumed that those terms were properly expressed in the instrument").

       "To reform a deed, Alabama caselaw requires evidence of the intent of all parties to the instrument." *Fadalla*, 929 So.2d at 435. So the critical inquiry concerns the record evidence of all parties' intent. SESH presents substantial evidence from Katherine J. Maidens, its "Right-of-Way Manager," that SESH's intent in the agreement "was that the 50-foot easement we were acquiring from the Odoms would be adjacent to an existing pipeline easement across the Odom property owned by another company." (Maidens Aff., ¶ 4.)[14] Maidens elaborates that SESH's

---

       [14]    The Odoms have filed a Motion to Strike the Maidens Affidavit (doc. 44). In particular, plaintiffs contend that Maidens' opinions about the necessity (or lack thereof) of

intent was for its right-of-way to be adjacent to the Gateway Easement because the FERC certificate governing the project "essentially required that our easement be adjacent to existing easements, and our intent was to comply with this certificate." (*Id.*)  Maidens also explains that the exact location of the pipeline within the 50-foot easement strip was not particularly important to SESH (either from an operational or a regulatory standpoint), and that the Easement defined the boundaries of the right-of-way by reference to the pipeline location simply because that is a common formulation in pipeline easement agreements.  (*Id.*, ¶¶ 5-6.)

There is also evidence that the Easement was the product of mistake on plaintiffs' side, and that the Odoms shared SESH's intent, agreement and understanding that the right-of-way was to be placed immediately adjacent to the Gateway Easement.  Nowhere is plaintiffs' intent more clearly expressed than in their Answers to Defendant's Interrogatories (doc. 45, at Exh. 4.)[15]  In those Answers, which plaintiffs have verified, the Odoms aver that they executed the

_____

placing the pipeline in the middle of the right-of-way are "irrelevant and immaterial" because the Easement itself defines SESH's right-of-way as being 25 feet in either direction from the centerline of the pipeline.  (Doc. 44, ¶ 2.)  Plaintiffs also wave aside Maidens' statements on the ground that the Easement speaks for itself, and "[w]hat Ms. Maidens thinks about all that as a SESH employee has nothing to do with the issues in this case."  (*Id.*, ¶ 3.)  Plaintiffs misunderstand the purpose of Maidens' Affidavit.  As explained *supra*, defendant's claim for reformation of the Easement pursuant to § 35-4-153 requires clear and convincing evidence that both parties' intent differed from the words in the Easement.  Maidens' Affidavit constitutes defendant's evidence of its intent and, as such, is highly relevant and material to the reformation claim.  As for the suggestion that Maidens' testimony does not matter because it conflicts with the terms of the Easement, plaintiffs are missing the point.  The entire thrust of defendant's reformation claim is that the Easement language is trumped by both sides' intent, which diverged from the written instrument.  It is inherent in proof of a reformation claim that a party must present evidence (as SESH has done) that its intent was at odds with the written instrument.  *See, e.g., Scarber v. Kelsoe*, 594 So.2d 68, 69-70 (Ala. 1992) ("It is practically the universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact ... of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had.") (citations omitted).  Thus, far from being a self-serving and irrelevant sideshow, Maidens' Affidavit is central to the reformation issue on summary judgment.  Accordingly, the Motion to Strike is not well taken.

[15]     For unknown reasons, plaintiffs' counsel filed these interrogatory responses not only as part of the summary judgment record, but also as a separate docket entry contemporaneously with service upon defendant's counsel.  The Local Rules provide that

Easement on the basis of SESH's representations "that the easement by SESH would be adjacent to and contiguous to the existing Gateway easement." (Doc. 45, Exh. 4, at #4.) Plaintiffs reiterate this point by stating their understanding at the time of signing the Easement "that in fact the Gateway easement that was of record and in place would be adjacent to the easement as constructed and granted by us to SESH." (*Id.* at #7.a.) Plaintiffs further reinforce their understanding of the agreement by stating that "the gap between the existing Gateway and SESH easements[] [was] contrary to everything we ever discussed or agreed upon." (*Id.* at 8.) Plaintiffs own statements thus unequivocally establish that their intent was that the SESH right-of-way would be positioned adjacent to the boundary of the Gateway Easement, with no gaps between them.

So here, then, is the mutual mistake: Both SESH and the Odoms intended at the time of the Easement's creation that SESH's right-of-way would be contiguous to the southern boundary of the Gateway Easement across the length of the Odoms' property, with no gaps or spaces between the two easements. That's what both sides intended, yet their written instrument diverged from that intent because it defined the SESH right-of-way as the 25-foot strip on each side of the centerline of the new pipe, rather than as the 50-foot strip immediately abutting the Gateway Easement. The clear, convincing and satisfactory evidence in the summary judgment record thus reflects mutual mistake between the parties. Everyone wanted the SESH right-of-way to be placed right up next to the Gateway Easement, but the Easement document itself was drafted in such a way that a strip of "no man's land" between the two easements was created when the SESH pipeline was installed more than 25 feet away from the boundary line of the Gateway Easement. These are exactly the kind of circumstances for which the equitable doctrine of reformation (as codified at § 35-4-153) was created.

In response to defendants' request for reformation, the Odoms advance two primary

---

discovery responses "***shall not be filed with the clerk*** unless otherwise ordered by the court or for use at trial or in connection with motions." LR 5.5(a) (emphasis added). Plaintiffs' filing of their interrogatory responses as part of the summary judgment record at document 45 is permissible and appropriate; however, their stand-alone filing of those responses at document 30 at the time of service violates Local Rule 5.5(a).

arguments.[16]  First, plaintiffs insist that the parties' "mutual intent was contained in the document as drafted by SESH, the Grant of Easement with attached surveys depicting the SESH easement as being adjacent to the Gateway easement with the centerline of the SESH easement being the pipeline."  (Doc. 43, at 3-4.)  But the Odoms submit no parol evidence that the Easement fully captures their intent.  There is neither affidavit nor deposition excerpt in the record professing that the Odoms' intent was nothing more and nothing less than as set forth in the Easement instrument.  The representations of counsel as to what the Odoms did or did not intend are not acceptable substitutes for record evidence, and are therefore insufficient under fundamental Rule 56 principles.  In short, the Odoms have failed to show by reference to existing materials on file that there are genuine issues of material fact as to their intent.  The only evidence of the Odoms' intent in the record consists of sworn interrogatory responses in which they repeatedly state that they entered into the Easement on the express understanding and agreement that there would be no gaps between the SESH right-of-way and the pre-existing Gateway Easement.  Yet the written instrument allowed for such gaps.  That evidence squarely supports a finding of mutual mistake that would warrant reformation.[17]

---

[16]     Plaintiffs' opposition to SESH's attempts to reform the Easement is baffling.  The Complaint leaves no doubt that the Odoms sued SESH because there is an area of "no-man's land" between the two easements.  Indeed, plaintiffs' fraud claim centers on the fact that "the SESH pipeline was installed so that there was a variance or gap between the northern edge of the SEH easement and the southern edge of the Gateway easement," even though SESH had represented that "the pipeline would be adjacent to and contiguous to the southern boundary of the existing Gateway pipeline."  (Complaint, ¶¶ 7, 10.)  The fraud damages that the Odoms claim are that SESH's actions have "rendered that particular strip of land unusable."  (*Id.*, ¶ 11.a.)  Similarly, plaintiffs' nuisance claim proceeds on the theory that SESH's actions have "cause[d] the Plaintiffs to lose a piece of property ... between the northern boundary of the SESH easement and the southern boundary of the Gateway easement."  (*Id.*, ¶ 17.)  Defendant's claim for reformation would return to the Odoms the unusable strip of land about which they so bitterly complain, yet they are opposing it.  Plaintiffs did the same thing when SESH proposed amendment of the Easement to eliminate the complained-of gap before suit was filed.  Why?  The Court is hard-pressed to understand how there could be any good-faith, legitimate basis for plaintiffs' stance.

[17]     Plaintiffs' brief makes much of the Easement language defining the contours of SESH's right-of-way by the centerline of its pipeline.  But there is no evidence that the precise location of the pipeline (which was to be installed underground at a depth of 8 feet) was germane

Second, the Odoms protest that SESH is not entitled to this equitable remedy because of its own unclean hands.  There is no question that the reformation principles invoked by SESH are equitable in nature.  *See, e.g., Fadalla*, 929 So.2d at 434 ("The general rule in Alabama is that a court may exercise its equitable powers to reform a deed ....") (citations omitted).  Although plaintiffs cite no authority on this point, it is well established that "one who seeks equity must do equity and one that comes into equity must come with clean hands."  *J & M Bail Bonding Co. v. Hayes*, 748 So.2d 198, 199 (Ala. 1999) (citation and internal quotation marks omitted).  But the "unclean hands" doctrine is one of narrow application.  Alabama courts have emphasized that "the doctrine of unclean hands cannot be applied in the context of nebulous speculation or vague generalities; but rather it finds expression in specific acts of willful misconduct which is morally reprehensible as to known facts."  *Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc.*, 985 So.2d 924, 932 (Ala. 2007) (citations omitted).  In all cases, "[t]he application of the clean hands doctrine is a matter within the sound discretion of the trial court."  *J & M Bail Bonding*, 748 So.2d at 199.

The facts identified by the Odoms in support of their unclean hands argument fall well short of the applicable legal standard.  The inequitable conduct that the Odoms ascribe to SESH turns almost exclusively on its placement of the pipeline in the wrong spot, as well as its alleged

---

to the intent of any party.  SESH's evidence is that the exact position of the pipeline within the 50-foot right of way did not matter to it for either operational or regulatory purposes, and that the Easement referred to the pipeline centerline simply as a matter of convention.  (Maidens Aff., ¶¶ 4-5.)  And all of the evidence concerning the Odoms' intent is that they ardently desired the two easements to be adjacent to each other.  There is zero evidence that it mattered one whit to the Odoms whether the underground pipeline was in the exact center of the SESH right-of-way or not, so long as that right-of-way was adjacent to the Gateway Easement.  Nor is it possible to fathom any colorable reason why the Odoms would care whether the center of the underground pipeline rested at the exact midpoint of the SESH right-of-way, again so long as the easements were kept adjacent to each other.  Thus, all indications in the record are that the Easement's provision measuring the right-of-way as the 25-foot strip on either side of the centerline of the SESH pipeline were the product of lazy draftsmanship, rather than actually evincing any intent by the parties that the pipeline must be exactly in the middle of that right-of-way.  The record unambiguously demonstrates that the variable of concern to both SESH and the Odoms was not the specific position of the pipeline in the right-of-way, but rather that the SESH right-of-way be positioned so that it was exactly adjacent to the Gateway Easement.  The instrument does not accurately reflect that mutual intent; therefore, reformation is warranted.

lack of responsiveness and provision of false assurances when the Odoms notified SESH of the error.  (Doc. 43, at 5-6.)  As an initial proposition, even accepting all of the Odoms' factual allegations as true, the Court does not deem the misdeeds ascribed to SESH to constitute "specific acts of willful misconduct which is morally reprehensible as to known facts."  *Retail Developers*, 985 So.2d at 932.  If plaintiffs are believed, SESH promised to build the pipeline in a certain place, did not do it exactly right, and disregarded the Odoms' complaints about it.  Such conduct may not be laudable or exemplary, but it is not morally reprehensible, willful misconduct, either.  More importantly, the Odoms' "unclean hands" argument borders on the nonsensical.  SESH has called upon the equitable powers of this Court to reform the Easement and correct the mutual mistake that resulted in a gap between easements on the Odoms' property.  The Odoms say that this equitable power should be withheld because it is SESH's fault that the gap was created in the first place, and that gap has harmed the Odoms.  Thus, the Odoms are invoking the doctrine of unclean hands to block an equitable remedy that would benefit them by eliminating the strip of "no man's land" on their property, about the existence of which they purport to be aggrieved.  The Court is at a loss to understand how it would be inequitable to the Odoms to correct judicially the problems that the Odoms presented to SESH concerning the placement of the pipeline, even if SESH did ignore them, when that corrective measure would cure the vast majority of the Odoms' claimed injuries and obviate the vast majority of this federal lawsuit.  In short, the Court is convinced that it is fair to both sides, not simply to SESH, to reform the Easement to reflect the parties' original intent and to eliminate the gap between the two easements about which the Odoms complain.  This is the epitome of equity.[18]

---

[18]        If anyone has behaved inequitably in this matter, it is the Odoms.  After all, plaintiffs' own summary judgment exhibit confirms that, as early as May 2008, more than six months before suit was filed, SESH offered in writing "to amend the easement to provide that our permanent easement will be 50 feet immediately adjacent to the existing easement even if our pipe isn't precisely in the center of that 50 feet.  That way [the Odoms] would secure their goal of making sure they didn't have any 'gaps' or unusuable [*sic*] strips between the two easements."  (Doc. 45, at Exh. 3.)  Yet plaintiffs refused this corrective measure, instead attempting to parlay the situation into a financial windfall by filing a federal lawsuit against SESH to extract compensatory and punitive damages for the existence of gaps between the two easements, even though SESH had proactively offered to eliminate those gaps at neither expense nor inconvenience (nor any other conceivable detriment) to the Odoms.  To the extent that there

For all of these reasons, the Motion for Partial Summary Judgment is **granted** as to Count Two of defendant's Counterclaim.  Pursuant to Alabama Code § 35-4-153 and the equitable power of reformation, the Court hereby **revises** the Grant of Easement executed by the Odoms to provide that the right-of-way granted to SESH is defined as the 50-foot strip of land immediately adjacent to the southern boundary line of the Gateway Easement, irrespective of the exact location of the pipeline within that strip.

### C.      Implications of Entry of Summary Judgment on Reformation Claim.

Defendant contends that entry of summary judgment on Count Two of the Counterclaim is dispositive of all of the Odoms' causes of action.  As SESH puts it, "a judgment reforming the Easement Agreement ... to describe the SESH easement as immediately adjacent to the existing Gateway easement would leave Plaintiffs with no basis for their claims that SESH misrepresented the coverage of the Easement Agreement or that SESH's pipeline is a trespass or nuisance or causes the inverse condemnation of Plaintiffs' land." (Doc. 24, at 11.)  Plaintiffs disagree, citing two aspects of the record that they contend give rise to genuine issues of fact.

Initially, the Odoms contend that "there are genuine issues of fact in this case as to fraud in the inducement as the Odoms were promised that the SESH pipeline would be adjacent to the Gateway easement prior to signing the Grant of Easement." (Doc. 43, at 7.)  "Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action."  *Anderson v. Ashby*, 873 So.2d 168, 182 (Ala. 2003) (citations omitted).  But the uncontroverted record evidence is that SESH did not make any misrepresentations to the Odoms because it was SESH's intent to place the SESH right-of-way adjacent to the Gateway Easement.[19]  Moreover, now that the Easement

_____

are unclean hands, the record shows them to be plaintiffs'.

[19]      To show a genuine issue of material fact as to the element of misrepresentation (*i.e.*, that contrary to its promises to the Odoms, SESH did not intend to build the pipeline in such a way that the two easements would be adjacent), the Odoms must come forward with evidence beyond the mere fact that SESH did not ultimately build the pipeline in a manner that rendered the two easements contiguous.  *See, e.g., Campbell v. Naman's Catering, Inc.*, 842 So.2d 654, 658 (Ala. 2002) (citing authority for proposition that "failure to perform a promised

has been reformed pursuant to § 35-4-153, the SESH right-of-way is in fact positioned right where SESH promised the Odoms it would be, to-wit: Adjacent to the southern boundary of the Gateway Easement.  On these facts, there can be no fraud in the inducement because the record does not contain any reasonable inferences supporting a finding of misrepresentations concerning the location of the SESH right-of-way.  Additionally, because the reformed Easement positions SESH's right-of-way adjacent to the Gateway Easement, the wedge of no-man's land between the two easements has been eliminated.  That strip of no-man's land was the clear animating force of the Odoms' continuing trespass, nuisance, and inverse condemnation causes of action; therefore, its eradication necessitates dismissal of all of those claims because there is no longer an underlying wrong on which such claims could be based.

Plaintiffs' other contention as to genuine issues of fact fares better.  In particular, the Odoms maintain that there are "material issues of fact that as a result of the construction in terms of the Grant of Easement restoration of their land has not been complied with as topsoil was removed and not replaced, debris, muck and other construction materials were left onsite, [and] water stands on the Odoms' property in rainfall events."  (Doc. 43, at 7.)  Record evidence to support all of these facts can be found in the record.  (*See* doc. 45, Exh. 4, at #2-3.)  Additionally, the Odoms are correct that the Easement provides that at the conclusion of installation of its pipeline, SESH "will clean up the Right-of-Way in a workmanlike manner and restore the Right-of-Way as nearly as practicable to the same condition as prior to commencement of its operations."  (Maidens Aff., Exh. A., at 2.)  Defendant's sole response to this line of argument is to contend that "evidence of SESH's failure to restore simply has no relevance" because "Plaintiffs have not made a claim for breach of the restoration provisions of the Easement Agreement."  (Doc. 47, at 14.)  SESH is mistaken that failure to restore has not been joined as a triable issue in this case.  To the contrary, the fraud cause of action set forth in Count One includes allegations that SESH "failed to restore the right-of-way to its condition

---

act is not in itself evidence of intent to deceive at the time a promise is made.  If it were, the mere breach of a contract would be tantamount to fraud." ) (citations omitted).  Plaintiffs offer no evidence of intent to deceive other than the mere existence of gaps between the two easements, which is insufficient as a matter of law to create a genuine issue of material fact on the elements of a promissory fraud cause of action.

prior to the commencement of its operations causing what was otherwise usable farmland to be unusable due to erosion and soil disturbance." (Complaint, ¶ 9.) Thus, a reasonable reading of the Complaint is that the Odoms contend that SESH fraudulently induced the Odoms to execute the Easement by promising to clean up the right-of-way, even though they never intended to do so. What's more, defendant has not presented any record evidence on this aspect of Count One sufficient to satisfy its initial Rule 56 burden; therefore, summary judgment will not be entered in defendant's favor on the failure-to-restore aspect of Count One, and that claim will not be dismissed at this time.

The only other cause of action that survives today's ruling is Count Three of defendant's Counterclaim, as to which defendant did not move for summary judgment. Count Three is an abuse-of-process claim against Larry Odom, alleging that he threatened at the outset of the parties' dealings to "make things very difficult for SESH," and proceeded to do just that by confronting SESH representatives and contractors on the jobsite, reporting SESH to various governmental agencies in an attempt to disrupt its pipeline project and harass SESH, and rejecting reasonable opportunities to eliminate the "no-man's land" strip of land that is the ostensible *raison d'etre* of this lawsuit. (Doc 9, at ¶¶ 11-24.) No one has moved for summary judgment on this claim, but the record leaves no doubt that there is adequate factual support for this cause of action to present a triable issue.

## V.      Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.      Plaintiffs' Motion to Strike Affidavit of Katherine Maidens (doc. 44) is **denied**.

2.      Defendant's Motion for Partial Summary Judgment (doc. 23) is **granted in part**, and **denied in part**. The Motion is **granted** as to Count Two (reformation) of the Counterclaim, and the Court **revises** the Grant of Easement executed by the Odoms to provide that the right-of-way granted to SESH is defined as the 50-foot strip of land immediately contiguous to the southern boundary line of the Gateway Easement, without regard to the position of the pipeline within that strip. The Motion is further **granted** as to Counts Two, Three and Four of the Complaint, as well as the portion of Count One relating to the position of the

SESH right-of-way and pipeline.  All of those causes of action are **dismissed with prejudice**.  The Motion is **denied** in all other respects.

3.      The remaining causes of action for trial are the portion of plaintiffs' Count One (fraud) relating to misrepresentations about restoration of the right-of-way, and defendant's Count Three (abuse of process) against Larry Odom.

4.      This action remains set for a Final Pretrial Conference before the undersigned on **January 19, 2010** at **10:30 a.m.**, with jury trial to follow in the February 2010 civil term.  In the interim, this case is **referred** to Magistrate Judge Nelson to explore the viability of a judicial settlement conference or other alternative dispute resolution mechanism.

DONE and ORDERED this 9th day of December, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE