IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY A. ODOM, SR., *et al.*, | ) | |
| | ) | |
| Plaintiffs / Counter-Defendants, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 09-0147-WS-N |
| | ) | |
| SOUTHEAST SUPPLY HEADER, LLC, | ) | |
| | ) | |
| Defendant / Counter-Plaintiff. | ) | |

**ORDER**

This matter comes before the Court on plaintiffs' Motion for Amendment of Order Pursuant to 28 U.S.C. § 1292(b) (doc. 68).

**I. Background.**

Plaintiffs, Larry and Judy Odom, sued defendant, Southeast Supply Header, LLC ("SESH"), over an easement. In brief, SESH and the Odoms had negotiated an arrangement that would allow SESH to install a natural gas pipeline below the surface of the Odoms' property. On that basis, the Odoms granted SESH a permanent 50-foot easement, with the midpoint of the pipeline defining the centerline of the easement. The record is clear that all parties expressly understood and desired that the SESH easement was to be positioned directly adjacent to a pre-existing easement on the Odoms' land for another, unrelated pipeline. For whatever reason, the SESH pipeline was not installed in precisely the right location, leaving a sliver of land between the two easements ranging from 0.06 feet to 5.23 feet wide. The resulting "gap" prompted the Odoms to sue SESH on theories of fraud (*i.e.*, SESH had misrepresented that the easement would be adjacent to the existing easement), continuing trespass (*i.e.*, the pipeline was built in the wrong spot, so the resulting easement was in the wrong spot), nuisance (*i.e.*, the Odoms had "lost" the gap property because of SESH's conduct), and inverse condemnation (*i.e.*, SESH had converted the Odoms' property into a right-of-way without compensation by placing the easement in the wrong place).

On December 9, 2009, the undersigned entered an Order (doc. 62) granting in part

defendant's Motion for Partial Summary Judgment (doc. 23). That Order reformed the easement instrument, pursuant to Alabama Code § 35-4-153, on grounds of mutual mistake. The Court explained that mutual mistake justifying reformation exists "when the parties have entered into an agreement, but the deed does not express what the parties intended under the agreement." *Fadalla v. Fadalla*, 929 So.2d 429, 434 (Ala. 2005). This legal standard for reformation was not contested by either side. Upon scrutiny of all record evidence, the Court found that mutual mistake existed and that reformation was appropriate, as a matter of law, reasoning as follows:

> "So here, then, is the mutual mistake: Both SESH and the Odoms intended at the time of the Easement's creation that SESH's right-of-way would be contiguous to the southern boundary of the Gateway Easement across the length of the Odoms' property, with no gaps or spaces between the two easements. That's what both sides intended, yet their written instrument diverged from that intent because it defined the SESH right-of-way as the 25-foot strip on each side of the centerline of the new pipe, rather than as the 50-foot strip immediately abutting the Gateway Easement. ... Everyone wanted the SESH right-of-way to be placed right up next to the Gateway Easement, but the Easement document itself was drafted in such a way that a strip of 'no man's land' between the two easements was created .... These are exactly the kind of circumstances for which the equitable doctrine of reformation (as codified at § 35-4-153) was created."

*Odom v. Southeast Supply Header, LLC*, --- F. Supp.2d ----, 2009 WL 4884313, *7 (S.D. Ala. Dec. 9, 2009).

On that basis, the Court reformed the easement instrument "to provide that the right-of-way granted to SESH is defined as the 50-foot strip of land immediately adjacent to the southern boundary line of the Gateway Easement, irrespective of the exact location of the pipeline within that strip." *Id.* at *9. The gap about which the Odoms claimed to be aggrieved having thus been eliminated, most of plaintiffs' claims were dismissed for lack of an underlying wrong.[1] Pursuant to the December 9 Order, the only triable claims remaining in this action are (1) the Odoms' fraud claim pertaining to SESH's non-restoration of their property after installing the pipeline, and (2) SESH's counterclaim for abuse of process.

---

[1] Of course, reformation of the easement plainly benefitted the Odoms, by eliminating the "no man's land" between easements that lies at the heart of their lawsuit. Plaintiffs' emphatic and continued opposition to this equitable remedy – despite its obvious advantage to them – reasonably calls into question their motivation in pursuing this action, and is symptomatic of the circumstances underlying SESH's pending abuse of process claim.

## II. Plaintiffs' Request for Certification of Interlocutory Appeal.

On January 8, 2010, a full 30 days after the summary judgment ruling, plaintiffs moved for certification of interlocutory appeal of the December 9 Order pursuant to 28 U.S.C. § 1292(b).[2]

As a threshold matter, the Eleventh Circuit has characterized § 1292(b) interlocutory appeals as a "rare exception" to the premise that the great bulk of appellate review must be conducted after final judgment. *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (pointing out that "§ 1292(b) sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test"); *United States v. One Parcel of Real Property With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1498 (11th Cir. 1985) (recognizing "strong presumption against interlocutory appeals"); *Camacho v. Puerto Rico Ports Authority*, 369 F.3d 570, 573 (1st Cir. 2004) ("Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare."). "Because permitting

---

[2] Plaintiffs' Motion underscores the reason for reformation of the easement by stating that the "thrust" of the Complaint is "that the easement as described is not descriptive of the actual location of the easement resulting in loss of use of land for the Plaintiffs." (Doc. 68, ¶ 2.) Via reformation, the easement is now descriptive of the actual location of the right-of-way (where the parties had desired and intended it to be all along), and this "lost land" has been fully restored to the Odoms. To be sure, plaintiffs insist that they "were not mistaken about anything in this case," but in the very next breath acknowledge their (mistaken) understanding from the outset that "the easement ... would flush up or be contiguous to the Gateway easement." (*Id.*, ¶ 5.) Plaintiffs have never suggested that they did not understand that the SESH easement was to be adjacent to the Gateway easement; to the contrary, their entire lawsuit is expressly predicated on that understanding. Because of the way the easement was drafted, however, the right-of-way did not end up being exactly contiguous to the Gateway easement. In light of these undisputed facts, plaintiffs' stubborn insistence that there was no mutual mistake is both mystifying and counterfactual. Equally unavailing is plaintiffs' attempt to shift the focus to the placement of the pipeline, which they ascribe to SESH's unilateral mistake. Plaintiffs have neither shown nor argued that placement of the SESH pipeline in the exact center of the right-of-way was material to the parties' agreement, or that it made any difference to them (or to anybody else) where that underground pipeline was placed within the 50-foot easement so long as the two easements were contiguous. Thus, the relevant mistake was the drafting of the easement to define the right-of-way's boundaries by reference to the centerline of the pipeline (even though the pipeline's exact location was immaterial to all concerned), rather than by reference to the boundary of the Gateway easement (which was of critical importance to all concerned).

piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy." *McFarlin*, 381 F.3d at 1259.

By its terms, § 1292(b) authorizes appeal of an interlocutory order only where the following criteria are satisfied: (1) "such order involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also OFS Fitel*, 549 F.3d at 1359 (litigant seeking § 1292(b) certification must satisfy all of these elements); *McFarlin*, 381 F.3d at 1256 (describing these criteria as the "core requirement" for § 1292(b) certification).

Section 1292(b) certification is inappropriate here because plaintiffs' dissatisfaction with the December 9 Order does not involve a "controlling question of law" within the meaning of the statute. In this Circuit, § 1292(b) appeals "should be reserved[] for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *McFarlin*, 381 F.3d at 1259. Moreover, it is beyond cavil that "[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact ***or whether the district court properly applied settled law to the facts or evidence of a particular case***." *Id.* (emphasis added).

Plaintiffs identify no pure questions of law that they wish to pursue via piecemeal appeal. They do not suggest that Alabama's reformation law is unsettled, that this Court misstated those legal principles, or that mutual mistake would not authorize reformation of the easement under Alabama law. Rather, plaintiffs' sole stated objection to the December 9 Order is that this Court erred in finding that the record facts give rise to a finding of mutual mistake, as opposed to unilateral mistake by SESH. So on appeal, plaintiffs would have the Eleventh Circuit review this Court's application of Alabama's settled reformation law to record facts. This is precisely what the Eleventh Circuit has stated it will <u>not</u> do in an interlocutory appeal, and constitutes an improper use of the § 1292(b) mechanism.

## III. Conclusion.

For the foregoing reasons, the Motion for Amendment of Order Pursuant to 28 U.S.C. §

1292(b) (doc. 68) is **denied**.

DONE and ORDERED this 14th day of January, 2010.

                                                     s/ WILLIAM H. STEELE
                                                     UNITED STATES DISTRICT JUDGE